Mr. Robinson, you may proceed. Good morning. Thank you all. This is my first argument in the fourth circuit, so here we go. I think that the issues in this case before the court are very clear with regards to my client's position. All the facts are factual, not findings, but facts and circumstances are conceded at this point. Mr. Robinson, just for my clarification, do you represent Mr. Moody or Ms. Carter? I represent Ms. Carter. All right, thank you. Okay, sorry about that. As I was saying, all of the testimony, all the evidence is truly undisputed. You know, the question remains whether or not there was substantial evidence sufficient for a finding of guilt and to support the conviction, and I submit that there was not. As I said, there's, we're not, I'm not disputing anything, any factual issues such as the basis for the stop, the observance of furtive gestures of a passenger, car pulling over, and the officers coming into contact with both driver and passenger, my client was the driver, and then the subsequent discovery of certain items. I'm not disputing where they were found and when they were found. There was a Glock 22 found under the passenger seat. There was a Glock 43 found behind the driver seat. That's my client. Next to and among other debris and items in the car, that Glock 43 that was found behind the driver's seat was, was next to a bag which contained the suspected narcotics. Also inside that bag was gloves, packaging material, the drug itself, and a charger in a digital scale. No question that the, that the items found were, may have been consistent with, or should I say inconsistent with personal use. Okay, so Mr. Robinson, was the Glock, the Glock 22, that was under the passenger seat, right? Correct. Not visibly visible, but yes. Exactly, that's my point. That seems like a good point for you, that while, while the magazine for the Glock, the other Glock, was in plain view in the console, this, the Glock 22, is under the passenger seat. Your client is the driver. Yes. And this was not in plain view, so could you make your argument about that particular count with regard to your client in the Glock 22? Yes, with regard to the Glock 22, it was not open and obvious, although it wasn't in a, in a closed container, not readily visible by the of the vehicle, correct? Even though she was driving. Correct. Only the operator. It was, I believe, was undetermined as to who owned the vehicle or who was registered to. Is it true, Mr. Robinson, that Ms. Carter bought that firearm hours before her arrest? Not bought the firearm, Your Honor. She had reclaimed it from a pawn shop, I think, within, within a day or so of being stopped by the officers. That's what the government's witnesses had, government's witness had disclosed from her signing the pawn sheet when she reclaimed it. And that's the one that was under the passenger seat? Under, behind the driver's seat, Judge. The one behind the driver's seat. Okay, she reclaimed the, the 43 from the pawn shop. Okay, nothing to do with the one under the passenger seat that she couldn't see. Correct. Correct. And getting back to where I was with the firearm in some proximity to the bag that client made no furtive gestures towards that item. There were no, no forensics, no DNA, no prints, or identify, identification, or any other identifiers in that bag to connect it to my client. It is just mere proximity, mere location. None of the government's witnesses could testify as to how, when, and, and by whom the item was placed into the vehicle. Talking about the bag that had the contraband in it. Not so much the firearm, because there is a, a trail of, or should I say, a knowledge trail with regards to her reclaiming it just before the stop. And I believe I'm just about out of time, so I'll reserve some for rebuttal. If there are any other questions. Mr. Robinson, Mr. Bodner. Thank you, your honor. Thank you for your patience. I apologize for that delay. No problem. May it please the court, my name is Mark Bodner and I am counsel for the co-defendant in this case, Mr. Marcus Moody. And Mr. Robinson has well pointed out the facts in this case, and I think the ones that really speak out for my client are, and where I think the jury was wrong, was that the government did not prove that my client had any knowledge of the firearms or the drugs. As indicated, there was a gun under my client's seat. The evidence showed that you could not see the gun if you were in the seat. In fact, the officer who conducted the stop indicated quite expressly that you had to look under the seat to know that the gun was there. There was no other evidence to connect my client with that firearm or the one behind the driver's seat, or I should properly say under her seat and in front of the bag of the drugs. There were no, they submitted the firearms for testing, both for DNA and fingerprints, and they came up with nothing. So there was no connection there. And the same goes for his exercise of dominion and control. There was nothing to show because, of course, he lacked knowledge of either of these firearms that he ever exercised dominion or control over either the drugs or the weapons. And there are two cases that really point out well of the government's problem and the mistake that the position essentially is the jury could not have found based on the evidence presented beyond a reasonable doubt. They might have had a suspicion that something was afoot, that something unlawful was afoot, but they didn't have evidence beyond a reasonable doubt to show that Mr. Moody either exercised control over the guns or the drugs or knew that they were there. This court decided a very similar case back in the 90s, United States versus Blue. It's at 957 F. 2nd. And I have the page number also. And there was another case from the Second Circuit following Blue that is quite similar as well in Cheras in the Seventh Circuit. And both of these follow exactly the kinds of facts that we're talking about. Now in that the officer claims that after he conducted the stop or made the stop and as he was alighting from his vehicle, he saw my client reach behind the seat and make furtive movement. But he couldn't see what was in my client's hands or whether anything had happened. He saw him leaning forward. He couldn't tell what was happening there either. But that's addressed in Blue. And there are two Blue decisions. One's a vehicle stop and one is a search of an apartment and a conspiracy case. But the one I'm referring to is at 957 Virginia, the vehicle stop. In that case, this court said that the movement of the passenger in which his shoulder was shown to make a movement was not sufficient to show that the person, that the passenger had possession and control of the firearm that was discovered under his seat after the vehicle was stopped. Another parallel in that case to ours, the government seems to think that there's a significant factor in that my client had a significant amount of money in his coat when he was searched by the officer who stopped, Officer Polino. In the case I cited you, United States versus Blue, this circuit 957 F2nd. The passenger in that case also had a syringe and a small amount of drugs on his person. And apparently that was not enough to convince this court that the evidence was sufficient beyond a reasonable doubt to show that that passenger had exercise and control over the gun that was found beneath the seat in the car in which he was a passenger. As this court well knows, and as I think Mr. Robinson just alluded to, proximity to these items is not enough. I'd like to address the part where I believe the government is trying to make the case that there was a conspiracy here and therefore they had knowing possession of the firearms. And these were the fact that the existence of the gun and the drugs in the car was evidence of the conspiracy. You know, this was a vehicle stop that appears to have taken place under a very short time. The government did not show any evidence to show that these people knew each other other than when asked about my client's dipping his hand behind the driver's seat, Officer Polino elicited the response. My client said, That's my girl. That's my girl. Other than that, we don't know how long their relationship was. We don't know how long they were in the car. There was no evidence to show that they had been in business together. There were no buyers list. There was no paraphernalia found on my client, just money. Although it was, according to the government's expert, it was packaged in a suspicious way that was it was bundled. But my client explained that by saying, Dice game, dice game, dice game. And that's where he had gotten the money. So the government takes all this information, all these circumstances, and I understand that a conspiracy may be proved by circumstantial evidence and often is. But if you'll note the cases cited in the government's brief, and as I point out in our reply, almost all those cases involve numerous people involved in the conspiracy and conducting activities over an extended period of time in which they're surveilled. In our case, it's a photo flash, a screenshot. And what we have is the government's using both the gun and the drugs, which as I pointed out, were not proved to be within my client's dominion or control, or that he even had a knowledge or awareness of them to bootstrap into making a conspiracy argument that therefore, because these items of evidence existed, that is evidence of the conspiracy. So I see my time is almost up. I'd be happy to answer any questions the court may have. Thank you, Mr. Bogner. Ms. Taylor. May it please the court, Kristen Taylor, on behalf of the United States. Your Honor, substantial evidence in this case does support the jury's verdict as to both defendants on all counts. Yes, most of the evidence is largely circumstantial, but as this court is well aware, the law does not differentiate between circumstantial evidence. The circumstantial evidence in this case is very strong. Mr. Bogner mentioned United States versus blue. Our case differs from United States versus blue in terms of the circumstantial evidence on both a qualitative and quantitative basis. In this case, we have two people in the courtroom. Both of those guns are loaded, chambered. There is ammunition for the Glock 43 located in plain view, in close proximity and within reach to both defendants. The defense attempts to minimize the importance of Mr. Moody's statement as to Ms. Carter was the girl. He made that statement multiple times. And from that, the jury was free to properly infer that an intimate relationship existed between these two individuals. It's an important point because it changes the game in the sense that these are not just two people in a car together. Now, this is a boyfriend and girlfriend driving around in the car together. And that fact is important. Maybe not just positive, but certainly an important fact to consider in the totality of the circumstances, the way that this court and the way that the jury should consider the evidence in this case. In addition to the strategic placement of the weapon, it's also important that testimony came in regarding the placement of those weapons specifically. So, Officer Polino testified that the Glock 43, which is a passenger seat, was only accessible from the front. In addition to that, the Glock 43, which the defense does not dispute belonged to Ms. Carter, was only accessible from the rear. Now, recall that Mr. Moody was observed by Officer Polino. So, Ms. Teller, with regard to Ms. Carter, the Glock 22, you say, was only accessible from the front, but it was under the passenger seat and not visible. So, she, in the driver's seat, could neither see it nor arguably access it, since you said it was only accessible from the front. The Glock 43, and I understand there are other circumstances with regard to her and the Glock 43, but the Glock 43 was under her seat, but only accessible from the back. So, she couldn't get to that one either. That's correct. With respect to the Glock 22, which she couldn't see, and she didn't own the car, and she couldn't access it from the driver's seat, what is the sufficient evidence for the jury to convict her on that count with regard to the Glock 22? The circumstantial evidence in its entirety. So, again, you can't point to any one specific piece of evidence and consider that alone, but the circumstances in its entirety, particularly the fact that she was the operator of the vehicle. This circuit has recognized that a person who affirmatively exercises dominion and control over a vehicle containing weapons and contraband… And when she is not the sole occupant in the vehicle, has dominion and control over things in the vehicle that she can't see? Have we ever held that? I can't speak to that specifically. I know that I reviewed United States v. Herder and United States v. Armstrong, but you're right to say that in those cases, the defendant was the sole occupant of the car. I think that's where the relationship between these two individuals comes into play, and it's important. You know, the two of you, again, a boyfriend and girlfriend, jurors know what that means. They know what boyfriend and girlfriend mean. There's a certain closeness, you know, a conversation of closeness between those two people. So, that's… Ms. Breeden, you acknowledge, you concede that your case is all circumstantial evidence in terms of the weapons. You concede that. Yeah, largely circumstantial case, but strong circumstantial evidence. Now, you said the girlfriend relationship is established. All he said was, that's my girl, that's my girl. What relationship did you establish? I mean, the government had a chance to do that, right? What, beyond those statements, was that trial introduced to the jury? That was the strongest piece of evidence, of course. That was it? Well, you're charging someone with a conspiracy. Right, and that's… Wait a minute, wait a minute, I have a question. And at trial, that's all you come up with, is someone defined her as my girl? So, that's… I'm sorry, go ahead. Is that it? So, in terms of the relationship between Mr. Moody and Ms. Carter, yes, that's the most important fact going to that factor. But that's just one factor among many that your honors have considered in previous cases in establishing a conspiracy between two or more people. United States versus Burgos established several factors that your honors consider when deciding whether or not a conspiracy takes place. All right. I'm sorry, your honor. Go ahead, I mean, go ahead, tell me the ones that relate to you. Certainly, that includes the relationship between the participants. Sometimes that's not altogether clear. Sometimes you have… You have a relationship, all you have is a statement that somebody said, that's my girl. We do. That makes a relationship? We do. We also, I'm sorry, your honor. It's still more than saying, if he called her by name, that means he knows her name. Is that a relationship? No, I mean, he specifically said, that's my girl, and he said it multiple times. Well, if calling her by name is not enough, how is this nondescript term, girl, stronger? I think saying her name would actually not have been as strong in terms of circumstantial evidence suggesting their relationship. I mean, just saying somebody's name suggests that you might know them, but it doesn't suggest anything about, you know, what is going on between them. He said, he used a possessive, you know, possessive word, that's my girl. He didn't say, this is a girl, this is Ms. Carter. He said, that's my girl, and there's a common understanding as to what my girl means. Now, certainly, the jury could have inferred, you know, could have absolutely reasonably inferred from that statement that the two of them were in a relationship together. They were also traveling at 340 in the morning together in Ms. Carter's vehicle. So that circumstance can also be taken into consideration by the jury, you know, to consider what type of relationship these two people have. I also think it's an important factor. Even if they're boyfriend and girlfriend, I don't see how that means that she knew everything he was up to or everything that may have been in the car, especially the things that were not in plain view. Certainly, boyfriends are not often honest with girlfriends. That's true. That's true. But again, that's when I ask your honors to kind of pull out from focusing on any one fact alone and looking at the circumstances altogether. You know, again, so you've got two people in the car. You've got the statement, my girl. You've got Ms. Carter just hours before. Again, the stop took place during the early morning hours of December 30th of 2018. But on December 29th of 2018, Ms. Carter went back. And it's an important fact that she repurchased a gun that she had pawned in October of 2018, October 29th. I'm sorry, she initially purchased it October 29th of 2018. She pawned it just a couple of days later on November 5th of 2018. Again, we're asking the jury to say it was just a coincidence that hours before these two people were found inside of a car with 75 grams of cocaine packaging materials, a scale. She went and repurchased that gun. That gun was then ready to go. It was loaded, and it was chambered, and it was underneath the seat. The Glock 22 had the exact same placement, loaded, chambered, placed under the passenger seat. Again, there can be an innocent explanation for any one of these facts alone. But when you consider these facts together, they become more and more persuasive. It's a chain of reasonable inferences, one after another. And that's what the jury did in this case. They drew one reasonable inference after another and arrived at the conclusion that they did. Again, whether your honors think that as to any one particular fact, the jury could have gone the other way, that's not the question. The question here is whether it was irrational for the jury to have gone the way that it did. And in this case, you just can't say that it was irrational for the jury to believe that based upon these statements, based upon the circumstances, they arrived at the conclusion that they did. Ms. Breeden, isn't this a stretch for conspiracy? I mean, you have drugs, okay, the packaging and the amounts and the money, the possession with intent to distribute. But conspiracy, isn't that overreaching in this case? I don't think it is, Your Honor. I think that it's very clear. I mean, a conspiracy doesn't have to be a formal, you know, extensive agreement. It just has to be a tacit agreement or a mutual understanding between two or more people. And I think the facts in this case certainly suggest that there was that mutual understanding between Ms. Carter and her boyfriend, Mr. Moody. Certainly, the facts suggest in this case that Mr. Moody could very, you know, could have very well been the drug dealer in this case. He had the money on his person. He had that money. Ms. Breeden, we have cases that say that just because someone was driving someone, that's not enough to say they're involved in a conspiracy. I mean, because what you're taking just because he says he describes her as my girl, you're then roping her into a conspiracy? That means, for example, you're sitting in the car, all it would take is someone to say, oh, yeah, yeah, that's my girl right there. And that means she's guilty of conspiracy with everything that's in the car? Not at all, Your Honor. Actually, that's not the only fact that the government has pointed to. Yes, that is an important fact. It is an important fact that she was driving the car. And another important fact is the time of day. Another important fact is his statement that that's his girl. But in addition, again, I'd point your attention to the fact that she went and repurchased that gun. And that's just a really big coincidence to ask the jury to accept. I mean, you're now saying that it is just a very big coincidence that that day, just hours before that stop, she went back to repurchase the gun that she had pawned. And then the jury was also aware that her boyfriend was a felon, who didn't necessarily mean certainly. That doesn't mean you don't have access to firearms, unfortunately. But the ready and easy access to firearms certainly isn't there. She was not a felon at the time. Ms. Taylor, let me ask you this question. On your theory of the case, suppose the two defendants had gotten out of the car and Ms. Carter said, yes, that gun under my seat is my gun. The other guy says the gun under my seat is my gun. Can they both be charged with both guns? Yes, they can. Given that? Yes, because you don't have to have any ownership whatsoever over a gun to be charged with constructive possession of that gun. So who those guns belong to doesn't really matter. I mean, it's certainly a factor to consider. I think it goes to knowledge. It goes to that element. But whether or not that Glock 43, just because Ms. Carter owned that gun and purchased that gun and doesn't dispute that doesn't mean that Mr. Moody wasn't aware of the presence of that gun and was in constructive possession of that gun. He could have exercised dominion and control over that gun himself by reaching behind the seat, or he could have exercised dominion and control over that gun through Ms. Carter. Either way, he's in constructive possession of that gun. I would also. Just one question. Under your theory of the case, or not just theory of the case now, in terms of evidence before the jury, what was the act in furtherance on the part of Ms. Carter for the conspiracy? I think that there would be arguably two. I think her driving the vehicle, transporting the drugs in the contraband. And I think the purchase, the repurchase of the weapon was another affirmative act in furtherance of the conspiracy. You're trailing off. Driving the car and what else? Driving the car and then the repurchase of the Glock 43 and placing that one that was present under her seat. I think that that's another affirmative act in furtherance of the conspiracy. Because again, look how many, the amount of drugs that were in the back seat. And I would also note that her gun that she knew about. What was the amount of drugs? 75? Approximately 75 grams of cocaine. Grams. Correct. And that's, how many ounces is 75 grams? I'm not sure, I can't do the quick conversion. It's a little less than three ounces, right? I can't say for sure. It's not a lot. My point is you said the amount of drugs. That's not a lot. Well, it is. It's easily, readily concealable. It has a street value of between $8,000 to $10,000. Right. The value doesn't make it a large amount such that he, for example, couldn't have readily concealed it from her. Could have put it in his pocket, that amount. It was a relatively, it was placed in like a Nike drawstring bag. But again, I would point to the fact when it comes to the quantity of the drugs, 75 grams, a typical user amount is about three and a half grams or an eight ball. So when you consider that in light of the 75 grams, that's what the jury heard. That's a substantial, substantially more than that. I'm not discounting that that's a sufficient amount to show intent to distribute. I'm questioning whether it's a sufficient amount for Ms. Carter to have known that it was there because you just said something about the amount of drugs as being evidence of a conspiracy. Yeah, I understand. I understand what you mean. I would point your direction to two pieces of evidence to suggest that number one would be the fact that her weapons that she knew about, that she had to have placed under that seat within hours of that stop was only about six to 10 inches away from the bag containing the drugs. So that's one fact that I would point your attention to. And the magazine for that weapon that she had read, that she'd gotten back from the pawn shop, that was in plain view in the console of the car, right? Actually, it wasn't in the console. It was under the temperature controls. So when you look at the front of the vehicle, it's in that area where sometimes you put change or something like that. Right. So plain view, though, for her. Correct. Plain view for both and within reach of both defendants. I would also I wanted to also point your attention to the fact that 54 of that 75 grams worth of cocaine was in compressed powder form. And that fact also came in through testimony. And Sergeant Ronenberg explained what that meant. Compressed powder is typically broken off of a kilo. And that's how dealers typically purchase that. And then they take it and they break it down for further distribution. So part of the cocaine was in powder form. Part of it was in the compressed powder form. Which suggests, I mean, it certainly isn't dispositive of, but it suggests that it was recently purchased. So the jury could have inferred that that was a recent purchase. And, of course, these two individuals are together. Late at night, Mr. Moody has this money on him. And so I think that that would be another fact that you would want to point to. And then, again, with regard to Mr. Moody, his furtive gestures toward those items. I believe the defense suggested that there was no other evidence that he had knowledge of these items in the car. The drugs or the gun. Well, although Blue says furtive gestures alone aren't enough. I've just discussed a whole lot of evidence that's not in United States v. Blue. But the affirmative movements are important. Because it does suggest to the jury that right before Officer Paulino approached the vehicle, Mr. Moody was reaching behind the seat not once, but twice. He reached behind the seat twice. Is it a coincidence that there was now a gun found in an area consistent with one of those movements? And the 75 grams of cocaine in the bag in an area consistent with that movement. Then he made a third gesture. He ducked out of view. Which is consistent, again, we find the Glock 22 with the butt facing forward. So the butt of the gun facing forward towards the front of the passenger seat. And he makes a movement toward that. That's a lot of coincidences to ask the jury to accept. And then finally, I would also point, your honors look at evasive behavior as being important evidence in furtherance of constructive possession. Although the testimony established that they weren't super evasive when Officer Paulino came up and started talking to them, there was evasive behavior prior to the stop. Officer Paulino didn't stop the vehicle right after the initial traffic violation. He actually just directed his attention at the vehicle at that point. And he followed behind Ms. Carter. At that point, again, consider the facts. 3.40 in the morning. There's only one other car out on the road. The speed limit's 25 miles per hour. And she is tailgating the one vehicle on the road. She's swerving over the parking lanes, almost hitting parked vehicles. That also constitutes evasive behavior that occurred just before Officer Paulino observed those furtive gestures. So I see that my time is up. If your honors don't have any other questions, we respectfully ask that you affirm the defendant's convictions on all counts. And thank you for your time this morning. Thank you, Ms. Taylor. Mr. Robinson, you have some time reserved. Okay. I'll take up some of the issues that the court and the government raised. First of all, Mr. Moody referring to my client as my girl. Now, that is open to lots of interpretation. Does that mean it's a girlfriend, just met a Tinder date, a friend from high school that you just reconnected with, wife, baby mother? There are so many interpretations of that with varying degrees of acquaintanceship. So I would submit that since there wasn't any fleshing out of that, you know, our clients didn't testify. There was no other testimony regarding any other statements that they made. So with that still open to interpretation, it still becomes, it's still a question for the fact finder. We submit that the fact was just not met. The government has described what's called evasive maneuvers. Now, the vehicle nearly hitting another car, swerving out of its lane, you know, these were not things that were done in response to lights or sirens being activated. These were things that were observed by law enforcement. Swerving into a lane almost hitting a car, you're not necessarily evading anything. You're driving a vehicle, probably not very well, but that provided the basis for the stop because the officers are community caretakers and they were out there doing their job. So, again, we don't have any statement, no objective science as far as DNA prints, anything on any of the contraband in the car. We would only concede ownership and our possession at the most of the Block 43, which does have a paper trail on it leading directly back to my client. The government indicated that my client was aware of Mr. Moody's status as a felon. There was no testimony to that. She did not take the stand and there was no other investigation that revealed a statement to establish that suspicion. So I'll submit in the end, this case only arose to the to the level of suspicion and that the government did not carry its burden and should have produced an opposite result. We're asking you to vacate the convictions. Thank you, Mr. Robinson. Thank you for the court's technical assistance. I am having trouble unmuting my machine today. I don't know what it is. Mr. Robinson has just essentially summed up what this case is about. If I didn't state it in my opening argument and his as well, that this is a case upon inference, upon inference and not proof. And, of course, the jury is going to be tempted. And, of course, the jury found because how often does a jury encounter these kinds of situations? But when they hear these kinds of dangerous weapons and they see these things happening and they have the expert come in and testify that this is the nature of the trade. But what's missing is what I indicated when I first opened this case. There was no evidence to show the awareness of the weapons. There was no evidence to show the awareness of the drugs. When the people were stopped, when Miss Carter and Mr. Moody were stopped, the officer testified that they were calm. That's totally inconsistent with the argument that Miss Carter was conducting evasive activities with the car. Now, of course, the jury has discretion to decide what to believe and what to place emphasis on. But this court's obligation, of course, in reviewing the case is to assure that there is evidence to support these things. And that they are not drawn just upon inference and inferences that the jury could suppose this. The jury could suppose that this court is the gatekeeper to assure that there is evidence to support the assertions that the government has made. And that the jury had to find under the instructions of the law. Unless you have any questions, I'd submit and ask that you vacate these convictions. Thank you. Mr. Robinson, Mr. Bodner, I note that you are both court opponents. Thank you on behalf of the Fourth Circuit. Lawyers like yourself, we could not do our work without you all doing this work for this assignment. We really appreciate it. Thank you very much. And Ms. Taylor, we note your able representation of the United States. We can't come down and greet you by hand as we love to do in our tradition. But know that we very much appreciate your fine work and wish that you would be safe and stay well. Thank you so much. Thank the court for hearing us. Thank you. Have a good day.
judges: Roger L. Gregory, Henry F. Floyd, Stephanie D. Thacker